IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALPHONSE J. MENDY,

                Plaintiff,

v.                                              Case No. 17-2322-DDC-GLR

AAA INSURANCE, et al.,

                Defendants.

## MEMORANDUM AND ORDER

Pro se plaintiff Alphonse J. Mendy filed this lawsuit against defendant Auto Club Family Insurance Company (misnamed by the Complaint as AAA Insurance) and defendant ABC Insurance Company.[1] Plaintiff's Complaint asserts that defendants failed to pay an insurance claim for water damage to plaintiff's home and that defendants wrongfully cancelled the insurance contract between plaintiff and defendant Auto Club Family Insurance Company (hereinafter "Auto Club Family"). Plaintiff's Complaint asserts 10 separate claims for relief. Defendant Auto Club Family has filed a Motion to Dismiss. Doc. 8. The motion seeks dismissal of eight of the Complaint's claims. For reasons explained below, the court grants in part and denies in part defendant's motion.

### I. Factual Background

The following facts are taken from plaintiff's Complaint (Doc. 1). The court accepts the facts asserted in the Complaint as true and views them in the light most favorable to plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing

---

[1] Plaintiff never has served defendant ABC Insurance Company, and it has not appeared in this lawsuit.

*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court also construes plaintiff's allegations liberally because he proceeds pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).

On May 1, 2007, plaintiff purchased insurance coverage from Auto Club Family to insure his residence—a three-bedroom single-family home located in Johnson County, Kansas. Consistent with the parties' insurance agreement, plaintiff paid insurance premiums to Auto Club Family until it cancelled the policy in 2016. Plaintiff contends that he received no notice of cancellation from Auto Club Family. Instead, in April 2016, Midwest Regional Credit Union received a Notice of Cancellation from Auto Club Family. The Notice was sent to the Credit Union around the same time that plaintiff visited an Auto Club Family branch to renew the insurance policy that was due to expire on May 31, 2016. Auto Club Family cancelled the insurance policy about a month after sending the Notice and eight days before the policy's expiration. Auto Club Family collected a monthly premium from plaintiff even after sending the Notice of Cancellation.

Plaintiff alleges that Auto Club Family cancelled the insurance policy because plaintiff had a covered claim for water damage. Plaintiff also alleges that Auto Club Family refused to cover the water damage claim even though it was covered by the insurance policy. After plaintiff filed the insurance claim for water damage, an adjuster visited his home. The adjuster filed a report with Auto Club Family concluding that the damage resulted from a faulty design and prolonged water seepage into the building. Based on the adjustor's report, Auto Club Family denied plaintiff's insurance claim. Auto Club Family also contended that the damage was caused by pre-existing conditions, not covered under the policy. Auto Club Family had

inspected and photographed the building before it entered into the insurance contract with plaintiff. And, after that initial inspection, Auto Club Family never noted any evidence of faulty design or prolonged water seepage. Plaintiff (who is African-American) contends that Auto Club Family's reasons for denying coverage are a pretext for denying coverage to deserving insureds, particularly African-Americans and other minority insureds.

Plaintiff has asserted 10 claims for relief: (1) unlawful race discrimination (Count I); (2) discrimination based on termination (Count II); (3) breach of contract (Count III); (4) breach of contract for post-termination violations (Count IV); (5) unjust enrichment (Count V); (6) civil conspiracy (Count VI); (7) unfair trade practices (Count VII); (8) breach of the duty of good faith and fair dealing (Count VIII); (9) punitive damages (Count IX); and (10) expenses of litigation and attorney's fees (Count X). Auto Club Family moves to dismiss eight of these 10 claims—Counts I, II, IV, V, VI, VII, VIII, and X—under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim for relief. The court considers the motion below.

**II.    Is Subject Matter Jurisdiction Properly Invoked?**

Before turning to the substance of the Motion to Dismiss, the court considers whether subject matter jurisdiction exists. Plaintiff invokes this court's diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1 (Compl. ¶ 1). Diversity jurisdiction requires: (1) complete diversity between the parties, and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. Here, plaintiff alleges the requisite amount in controversy. Doc. 1 (Compl. ¶ 2). Plaintiff also alleges that the parties are diverse but the citizenship facts he alleges do not demonstrate that diversity exists.

Plaintiff alleges that he is a Kansas citizen. *Id.* (Compl. ¶ 7.A). Also, he alleges that defendant Auto Club Family Insurance Company (misnamed AAA Insurance) is a Missouri

citizen. *Id.* (Compl. ¶ 8.A). And, he alleges that defendant ABC Insurance Company is "a Kansas or foreign insurance company licensed to do business and doing business in Kansas . . . ." *Id.* (Compl. ¶ 8.B). The ambiguity created by plaintiff's alternative allegation about ABC Insurance Company prevents plaintiff from discharging his burden to establish complete diversity. Because he is the party invoking the court's jurisdiction, plaintiff bears the burden to establish that he and ABC Insurance Company are citizens of different states. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (explaining that "the burden of establishing" federal jurisdiction "rest upon the party asserting jurisdiction"). All plaintiff has done is allege that ABC may or may not be a Kansas citizen. That will not suffice.

Nevertheless, the court concludes that it has federal question subject matter jurisdiction under 28 U.S.C. § 1331. For a federal court to have federal question jurisdiction over a lawsuit, plaintiff must assert a "civil action[ ] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, plaintiff asserts several claims arising under federal law. In the first claim for unlawful race discrimination, Count I, the Complaint asserts that "Plaintiff was wrongly discriminated against in his contract because of his race in violation of 42 U.S.C. Section 1981, The Civil Rights Act of 1866, as amended." Doc. 1 (Compl. ¶ 53). Count II asserts unlawful discrimination based on plaintiff's "race, in violation of Plaintiff's Civil Rights, including the Civil Rights Act of 1866, as amended." *Id.* (Compl. ¶ 58). And, Count VII asserts a "violation of federal unfair trade practices legislation in both Title 12 and Title 15 of the United State[s] Code." *Id.* (Compl. ¶ 111). Because plaintiff alleges claims arising under federal law, the court has subject matter jurisdiction here over these federal claims. The court concludes that it also has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367. The court thus is satisfied that subject matter jurisdiction exists here.

### III. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

While the court must assume that the factual allegations in the complaint are true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

**IV. Analysis**

On July 11, 2017, defendant filed its Motion to Dismiss. Under our court's local rules, plaintiff's response to the motion "must be filed or served within 21 days," or by August 1, 2017. D. Kan. Rule 6.1(d)(2). Plaintiff failed to file a timely response. Almost two months after the deadline for responding had passed, plaintiff filed a Memorandum in Opposition to defendant's motion. Doc. 11. Plaintiff never asked for leave to file the response out of time. And, he never explains why he failed to file the response in a timely fashion.

The court recognizes that plaintiff proceeds pro se here. But, plaintiff's pro se status does not excuse him from complying with federal and local rules. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (citations and internal quotation marks omitted)). Under D. Kan. Rule 7.4(b), a party "who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum." The rule also states that "if a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice." D. Kan. Rule 7.4(b).

Because plaintiff failed to file a timely response to defendant's Motion to Dismiss, the court could consider the motion an uncontested one. But, even though plaintiff filed his response out of time, the court has considered its contents when analyzing defendant's Motion to Dismiss in the sections below.[2]

---

[2] Defendants have filed a Motion to Strike plaintiff's Memorandum in Opposition because it is untimely and filed without leave of court. Doc. 12. Despite plaintiff's untimeliness, the court considers plaintiff's Memorandum and Opposition. Exercising its discretion, the court denies defendant's Motion to Strike.

## A. Count I (Unlawful Race Discrimination under § 1981)

Plaintiff's first claim for relief asserts that Auto Club Family treated him differently based on his race and national origin. Specifically, plaintiff contends that Auto Club Family treated him differently by: (1) the manner of its correspondence with him, (2) denying an auto insurance claim, (3) denying his water damage claim on two different occasions, (4) cancelling his insurance policy without cause and without notice, (5) giving the Notice of Cancellation to his bank, and (6) refusing to negotiate with plaintiff in good faith. Doc. 1 at 8–9 (Compl. ¶¶ 41–42). Plaintiff also alleges that Auto Club Family simply denied his claims instead of "process[ing] [them] as it does for white people." *Id.* at 9 (Compl. ¶ 43). And, he alleges that Auto Club Family subjects plaintiff and "other like minorities" to greater and stricter claim requirements than other policy holders. *Id.* (Compl. ¶ 47). Plaintiff also asserts that Auto Club Family agents subjected him to harassment, humiliation, and greater scrutiny because of his race. *Id.* (Compl. ¶ 50). Plaintiff alleges that Auto Club Family's actions thus have violated 42 U.S.C. § 1981, the Civil Rights Acts of 1866. *Id.* at 9–10 (Compl. ¶¶ 42, 50).

Section 1981 prohibits racial discrimination in the making and enforcement of contracts. *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013); *see also* 42 U.S.C. § 1981(a). This statute provides that all persons "shall have the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). To state a claim under § 1981, plaintiff must allege facts that support each of the following three elements: "(1) that the plaintiff is a member of a racial class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001).

Auto Club Family asserts that plaintiff's Complaint fails to allege facts adequate to support the second element of this formulation. The court agrees. Plaintiff's Complaint just makes conclusory allegations that Auto Club Family discriminated against him based on his race. But, the Complaint alleges no *facts* capable of supporting an inference that Auto Club Family intentionally treated him differently because of his race. Such conclusory allegations fail to state a § 1981 claim. *See Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (holding that plaintiff's allegations that a landscaping company "used only unsuspecting African-Americans to apply pesticides" were "speculative at best" and thus failed "'to raise [his] right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)); *see also Muathe v. Fleming*, No. 16-2108-JAR-GLR, 2016 WL 6822653, at *7 (D. Kan. Nov. 17, 2016) (holding that plaintiff failed to state a § 1981 claim because "[a]lthough Plaintiffs allege[d] that Defendants' actions were motivated by 'invidious discriminatory animus' because Plaintiffs are members of a 'protected class,' these allegations are conclusory and not entitled to an assumption of truth"); *Phillips v. Fisher*, 445 F. Supp. 552, 556 (D. Kan. 1977) ("The mere fact that plaintiffs are black does not automatically entitle them to claim that anything that has happened to them has happened because they are black.").

Because plaintiff's Complaint fails to allege requisite facts with the specificity required by law—ones capable of supporting a plausible inference that Auto Club Family intentionally discriminated against plaintiff based on his race—the Complaint fails to state a claim under § 1981.[3]

---

[3] The court recognizes that plaintiff could cure his pleading deficiencies for this claim and other claims discussed in this Order by amending his Complaint. For example, he could cure his deficient § 1981 claim by alleging sufficient facts of intentional discrimination based on race—to the extent such facts exist—to state a plausible claim. But, plaintiff has not asked the court for leave to amend his Complaint. Indeed, he didn't file a timely response to the Motion to Dismiss. And, his belated filing

## B. Count II (Discrimination Based on Termination)

Plaintiff's second claim for relief alleges "discrimination based on termination." Doc. 1 at 11 (Compl. ¶¶ 56–62). It also asserts several generalized conclusions, including that Auto Club Family subjected plaintiff to "humiliation, greater scrutiny and criticism . . . because of his race," "subjected [him] to comments and even more severe language in the denial of his claims in retaliation," and that Auto Club Family terminated the insurance contract without following the procedures that the contract required. Doc. 1 at 11–12 (Compl. ¶¶ 58, 60, 61). Count II again invokes the "Civil Rights Act of 1866." *Id.* at 11 (Compl. ¶ 58).

The court cannot discern the basis for plaintiff's second claim for relief. To the extent plaintiff seeks to assert a § 1981 claim for racial discrimination, it fails for the same reasons that Count I fails. Plaintiff just makes conclusory allegations. He has not alleged any facts capable of supporting an inference that Auto Club Family intentionally discriminated against him based on his race. Plaintiff's second claim also fails to state a retaliation claim under § 1981 because it alleges no specific facts—only conclusory ones—that could give rise to an inference that Auto Club Family retaliated against him because he complained about race discrimination. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008) (holding that § 1981 "encompasses a complaint of retaliation against a person who complained about a violation of another person's contract-related 'right.'"). Without such allegations, plaintiff fails to state a plausible claim for relief under § 1981.

In its Motion to Dismiss, Auto Club Family suggests that perhaps plaintiff intended Count II to assert a retaliation claim under 42 U.S.C. § 1983. Auto Club Family also asserts that plaintiff fails to allege any facts supporting such a claim. To state a § 1983 retaliation claim, a

---

includes no request for leave to amend. So, the court declines to grant plaintiff leave to amend this claim or any other claims addressed in this Order.

plaintiff must allege: "(1) that [he] was engaged in a constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [his] exercise of [the constitutionally protected activity]." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Plaintiff's Complaint fails to allege facts sufficient to support these requirements for a § 1983 claim. Also, plaintiff never alleges that Auto Club Family is a state actor who plaintiff could hold liable under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981) (explaining that § 1983's requirement that a defendant act "under color of state law" is "a jurisdictional requisite for a § 1983 action").

For all these reasons, plaintiff's Count II fails to state a claim as a matter of law.

## C. Count IV (Breach of Contract for Post-Termination Violations)

Count IV asserts a claim for "breach of contract as to post-termination violations." Doc. 1 at 16. Auto Club Family asks the court to dismiss this claim because plaintiff identifies no contractual provision that confers post-termination rights.[4] Indeed, plaintiff's claim in Count IV alleges that Auto Club Family failed to cooperate with plaintiff or negotiate in good faith to resolve the contract disputes after Auto Club Family terminated plaintiff's insurance policy. Doc. 1 at 16–17 (Compl. ¶¶ 91, 93). But, plaintiff alleges no contractual provision requiring Auto Club Family to cooperate after terminating the parties' contract.

The parties do not identify which state's law governs this breach of contract claim. A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including choice of law rules, of the forum state. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1104 (10th Cir. 1999) (citing

---

[4] Plaintiff's Count III asserts a breach of contract claim based on Auto Club Family's termination of plaintiff's insurance policy. Auto Club Family has not moved to dismiss that breach of contract claim.

*Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996)). In Kansas, the law of the state where the contract is made governs. *In re K.M.H.*, 169 P.3d 1025, 1031–32 (Kan. 2007) (citations omitted). "A contract is made where the last act necessary for its formation occurs." *Id.* at 1032 (citations omitted). Here, the record lacks sufficient information for the court to determine where the contract was made.[5] Such a "'[f]ailure to present facts sufficient to determine where the contract is made may justify a default to forum law.'" *Id.* (quoting *Layne Christensen Co. v. Zurich Canada*, 38 P.3d 757, 767 (Kan. Ct. App. 2002)). Also, in Kansas, "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'" *Brenner v. Oppenheimer & Co., Inc.*, 44 P.3d 364, 376 (Kan. 2002) (quoting *Sys. Design and Mgmt. Info., Inc. v. Kansas City Post Office Emps. Cred. Union*, 788 P.2d 878, 881 (Kan. Ct. App. 1990)). Because the parties have failed to present sufficient facts for the court to determine the choice of law question, the court defaults to the law of the forum state—Kansas.[6]

In Kansas, a breach of contract claim requires: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013) (citations omitted). Here, plaintiff's Complaint identifies no contractual provision obligating Auto Club Family to cooperate or negotiate in good faith after

---

[5] Although it is unclear, plaintiff's Complaint may assert that the place of contracting is Kansas. *See* Doc. 1 at 8 (Compl. ¶ 37) ("[T]he District of Kansas [is] where the Property that is the cause of this litigation is located and where [plaintiff] was contracted.").

[6] The court also discerns no material differences between Kansas law and general principles of contract law. No state's law omits the existence of a contract as one of the elements of a breach of contract claim.

11

termination of the insurance policy. Because plaintiff fails to allege the existence of a contract between the parties requiring any post-termination conduct, Count IV fails as a matter of law.

### D. Count V (Unjust Enrichment)

In Count V, plaintiff alleges that Auto Club Family has been unjustly enriched by disclaiming its obligations to provide insurance coverage on plaintiff's claims—including an automobile claim in 2012. Plaintiff asserts that Auto Club Family's refusal to pay insurance proceeds has allowed it to keep those funds instead of paying them to plaintiff. Plaintiff thus asserts that Auto Club Family is indebted to him for these amounts.

Auto Club Family first argues that plaintiff's unjust enrichment claim based on the denial of the 2012 automobile claim is barred by the statute of limitations. In Kansas, the statute of limitations for unjust enrichment claims is three years. *See Hartman v. Stumbo*, 408 P.2d 693, 696 (Kan. 1965) (applying three year statute of limitation to unjust enrichment claim); *see also* K.S.A. § 60-512 (requiring that "[a]ll actions upon contracts, obligations or liabilities express or implied but not in in writing" to "be brought within three (3) years"). Plaintiff filed this lawsuit on June 2, 2017. So, any claim about a 2012 insurance claim was asserted after the three-year statute of limitations had expired. It is thus time-barred.

Auto Club Family also moves to dismiss plaintiff's unjust enrichment claim because Kansas law precludes an unjust enrichment claim when a valid written contract exists between the parties. "Kansas law is clear that quasi-contractual remedies, such as unjust enrichment, are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1171 (D. Kan. 2006) (citations and internal quotation marks omitted). Indeed, our court has dismissed unjust enrichment claims when the parties do not dispute the existence of a written

contract governing the controversy. *See Orica New Zealand Ltd. v. Searles Valley Mineral Operations Inc.*, No. 04-2310-KHV, 2005 WL 387659, at *3 (D. Kan. 2005) (dismissing plaintiff's unjust enrichment claim after defendant stipulated that it was bound by the parties' written contract); *see also Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (dismissing restitution claim because the parties agreed that a written contract existed, and the written contract governed the dispute).

Nevertheless, an unjust enrichment claim is "available if the contract is void, unenforceable, rescinded, or waived by the party seeking to recover." *Ice Corp.*, 444 F. Supp. 2d at 1170–71. So, our court allows plaintiffs to plead an unjust enrichment claim as an alternative to a breach of contract claim when the parties have not stipulated to the existence of an enforceable contract between them. *See id.* at 1171 (denying motion to dismiss alternative unjust enrichment claim until it was clear that an express contract existed precluding the alternative theory); *see also Meyers v. Garmin Int'l, Inc.*, No. 13-2416-CM, 2014 WL 273983, at *8 (D. Kan. Jan. 24, 2014) (denying a motion to dismiss an unjust enrichment claim because the breach of express warranty claim did not preclude it until "it is clear that the express warranty is valid and enforceable"); *School-Link Techs. v. Applied Res., Inc.*, 471 F. Supp. 2d 1101, 1116 (D. Kan. 2007) (holding that a breach of contract claim did not preclude an unjust enrichment claim to the extent no enforceable contract existed).

Here, defendant has not stipulated—expressly—that a valid and enforceable contract exists between the parties that governs the dispute. Without such a stipulation, the court follows the cases above that have allowed plaintiffs to plead alternative theories for breach of contract and unjust enrichment claims when the record is not clear yet that a valid and enforceable contract exists. This approach is consistent with the Federal Rules. *See* Fed. R. Civ. P. 8(a)(3)

(authorizing a party to plead "relief in the alternative or different types of relief"); *see also* Fed. R. Civ. P. 8(d)(2) (allowing a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). The court thus denies defendants' Motion to Dismiss plaintiff's unjust enrichment claim to the extent it is not based on the 2012 automobile claim.

### E. Count VI (Civil Conspiracy)

Plaintiff's Count VI alleges civil conspiracy. To state a claim for the tort of civil conspiracy under Kansas law,[7] a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984) (citations and internal quotation marks omitted).

Here, missing from plaintiff's Complaint are any facts alleging the required elements of a conspiracy claim. Plaintiff alleges, generally, that defendants "conspired and continue to conspire with each other . . . to depriv[e] Plaintiff of his contractual rights and/or interfer[e] with their business and contractual relations." Doc. 1 at 18 (Compl. ¶ 102). Plaintiff's Complaint just alleges conclusions, but no facts capable of allowing an inference of an agreement between two

---

[7] Again, the parties do not explicitly address the choice of law question as it applies to plaintiff's civil conspiracy claim. But, Auto Club Family cites Kansas law in its Motion to Dismiss. Because the parties do not raise the choice of law issue and do not provide enough factual information for the court to decide this issue, the court applies the law of the forum state—Kansas. *See Mo. Pac. R. Co. v. Kan. Gas & Elec. Co.*, 862 F.2d 796, 798 n.1 (10th Cir. 1988) (applying Kansas law—the law of the forum state— in a diversity action when the record did not provide sufficient factual information for the court to determine the choice of law question and the parties did not raise the issue); *see also Neustrom v. Union Pac. R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998) (applying the law of the forum state—Kansas—in a federal question case when the parties cited Kansas law and thus the court assumed that Kansas law applied).

14

or more persons or a meeting of the minds. Without such facts, plaintiff's civil conspiracy claim fails to state a claim under Kansas law.

### F. Count VII (Unfair Trade Practices)

Count VII alleges that Auto Club Family committed unfair trade practices by cancelling his insurance policy without good cause and denying claims without justification. Plaintiff states that Auto Club Family's conduct violated "federal unfair trade practices legislation in both Title 12 and Title 15 of the United State Code," "Kansas unfair trade practices legislation," and "Missouri unfair trade practices legislation." Doc. 1 at 19 (Compl. ¶¶ 111–13). Other than this generalized reference, plaintiff provides no statutory citations for his unfair trade practices claims.

To the extent plaintiff brings his claim under federal law, the court cannot discern the federal cause of action plaintiff purports to assert in his Complaint. Title 12 of the United States Code is titled "Banks and Banking," and it contains 54 chapters; Title 15 of the United States Code is titled "Commerce and Trade," and it contains 111 chapters. These chapters encompass hundreds—if not thousands—of federal statutes. The court will not speculate which statute plaintiff intended to invoke to assert a claim for "federal unfair trade practices." This omission is especially important here because plaintiff's response (filed almost two months out of time) never clarifies the basis of his purported federal claim for unfair trade practices. The court thus analyzes plaintiff's state unfair trade practices claims only.

To the extent plaintiff brings his claim under the Kansas Consumer Protection Act ("KCPA"), this Act prohibits deceptive and unconscionable acts in connection with a consumer transaction. Kan. Stat. Ann. §§ 50-626(a); 50-627(a). The act defines a "consumer transaction" as the "sale, lease, assignment or other disposition for value of property or services within this

state (*except insurance contracts regulated under state law*) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." Kan. Stat. Ann. § 50-624(c) (emphasis added). The statute specifically excludes insurance contracts from KCPA coverage. *See State ex rel. Stephan v. Brotherhood Bank and Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982) (explaining that "the terms and definitions of the KCPA are all very broad with the exception of the specific exclusion of insurance contracts"); *see also* Kan. Stat. Ann. § 50-624(c) . So, to the extent plaintiff bases his KCPA claim on the parties' insurance contract, his claim fails as a matter of law. But, even if plaintiff alleges his claim on other actions by Auto Club Family, he has failed to state his KCPA claim with particularity. "Allegations of unfair trade practices under the KCPA must be pleaded with particularity in accordance with Rule 9(b)." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) (citations omitted). "For purposes of Rule 9(b), particularity includes the time, place and content of the alleged wrongful conduct, as well as the identities of the wrongdoers and the harm caused by plaintiff[']s reliance on any false representation." *Id.* (citation omitted). Here, plaintiff fails to allege his KCPA claim with particularity. Plaintiff's Complaint only offers conclusory allegations of deceptive conduct but no facts about the time, place, and content of the alleged wrongful conduct—other than Auto Club Family's general denial of his insurance claim. Plaintiff also fails to identify the alleged wrongdoers. Instead, the Complaint just alleges that Auto Club Family and its "agents" engaged in unfair or deceptive practices, but it never states *who* engaged in the wrongdoing. Without such facts, plaintiff fails to state a KCPA claim with particularity. And, the Complaint thus fails to state a KCPA claim as a matter of law.

To the extent plaintiff brings his claim under the Missouri Unfair Trade Practice Act, Mo. Rev. Stat. § 375.930, *et seq.*, this statute prohibits "any insurer" from committing "any practice"

16

defined as an "unfair trade practice[ ]" under the Act. *Id.* §§ 375.934, 375.936. The statute lists 12 practices that are defined as unfair trade practices in the business of insurance. *Id.* § 375.934. One of those practices is "unfair discrimination" that includes that "[m]aking or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract." *Id.* § 375.934(11)(a). Plaintiff's Complaint fails to allege a claim under this statute for the same reasons discussed in Part 4.A. above. It makes no more than conclusory allegations that Auto Club Family discriminated against him based on his race. But, plaintiff's Complaint alleges no facts to support his conclusory allegations. Plaintiff thus fails to state a claim for "unfair discrimination" under the Missouri Unfair Trade Practice Act.

### G. Count VIII (Breach of Good Faith and Fair Dealing)

Count VII alleges a claim for breach of the duty of good faith and fair dealing. Kansas law recognizes such a claim because "in Kansas, insurance policies are typically considered contracts, and Kansas law implies a duty of good faith and fair dealing in every contract." *H & L Assocs. of Kansas City, LLC v. Midwestern Indem. Co.*, No. 12-2713-EFM, 2013 WL 3854484, at *3 (D. Kan. July 25, 2013) (first citing *Aves ex rel. Aves v. Shah*, 906 P.2d 642, 648 (Kan. 1995); then citing *Howard v. Ferrellgas Partners, L.P.*, No. 10-2555-JTM, 2011 WL 3299689, at *6 (D. Kan. Aug. 1, 2011)). To assert a cause of action for breach of a duty of good faith and fair dealing, a plaintiff must: "(1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith,' and (2) point to a term in the contract 'which the defendant allegedly violated by failing to abide by the good faith spirit of that term.'"

*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996) (quoting *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1184 (D. Kan. 1990)).

Here, plaintiff's Complaint fails to identify a contract term that Auto Club Family allegedly violated by failing to abide by the good faith spirit of that term. Without any allegations to support this element, plaintiff fails to state a claim for breach of the duty of good faith and fair dealing under Kansas law.

### H. Count X (Expenses of Litigation and Attorneys Fees)

Finally, Count X seeks "Expenses of Litigation and Attorneys' Fees." Doc. 1 at 21 (Compl. ¶¶ 123 –25). Plaintiff employs this claim to assert that he is entitled to recover costs and attorney's fees in this lawsuit. Auto Club Family argues that plaintiff is not entitled to attorney's fees and costs because Kansas follows the "American Rule" holding that "in the absence of statutory or contractual authorization, each party to the litigation is responsible for his or her own attorney fees." *Robinson v. City of Wichita Emps.' Retirement Bd.*, 241 P.3d 15, 24 (Kan. 2010) (citation omitted); *see also Idbeis v. Wichita Surgical Specialists, P.A.*, 173 P.3d 642, 646 (Kan. 2007) ("As a general rule, attorney fees and expenses of litigation, other than court costs, incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties." (citations omitted)).

Here, plaintiff's Complaint identifies no statute or contract that allows him to recover attorney's fees and expenses. Thus, plaintiff has failed to state a claim as a matter of law. Nevertheless, the court recognizes that Auto Club Family has not moved to dismiss plaintiff's breach of contract claim. To the extent that this contract contains a provision allowing plaintiff to recover attorney's fees and expenses if he prevails, the court does not wish to bar plaintiff

18

from seeking that recovery. So, the court dismisses this claim, but it does so without prejudice. To the extent plaintiff can identify a specific contractual provision that would entitle him to recover fees and expenses in this lawsuit, plaintiff may seek the court's leave to allege this claim properly through an amendment.

## V. Should The Court Decline Supplemental Jurisdiction?

As explained above, the court finds that plaintiff's Complaint properly invokes federal question subject matter jurisdiction. But, it fails to allege diversity jurisdiction sufficiently. After dismissing the claims addressed above, the only remaining claims in this lawsuit are: (1) breach of contract (Count III); (2) unjust enrichment (Count V); and (3) punitive damages (Count IX). These claims arise under state law, not federal law.

Because the court has dismissed plaintiff's federal claims for the reasons explained above, the court may decline supplemental jurisdiction over plaintiff's three remaining state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [when] the district court has dismissed all claims over which it has original jurisdiction."). The decision whether to exercise supplemental jurisdiction is committed to a district court's sound discretion. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). But, where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do

not favor retaining jurisdiction." *Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (internal quotations and citations omitted).

Here, the court has dismissed every claim which it had original jurisdiction to decide. And, no pretrial proceedings or discovery have taken place yet. The court exercises its discretion and declines to assert supplemental jurisdiction over plaintiff's state law claims. But, because plaintiff's Complaint alleges diversity jurisdiction, the court will allow him an opportunity to clarify whether diversity jurisdiction actually exists here. The court will issue an Order to Show Cause separately, directing plaintiff to establish the basis for subject matter jurisdiction here. If plaintiff fails to make the showing requested by that Order, the court will dismiss the remainder of the case without prejudice.

## VI. Conclusion

For the reasons explained, the court grants in part and denies in part defendant's Motion to Dismiss (Doc. 8). The court dismisses Counts I, II, IV, VI, VII, VIII, and X from this lawsuit under Federal Rule of Civil Procedure 12(b)(6) because these claims fail to state plausible claims for relief. Counts III (breach of contract), V (unjust enrichment), and IX (punitive damages) remain.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 8) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Strike (Doc. 12) is denied.

**IT IS SO ORDERED.**

**Dated this 5th day of October, 2017, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**